[ORAL ARGUMENT NOT YET SCHEDULED]

## No. 15-5183

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————————

AMERICAN CIVIL LIBERTIES UNION and
AMERICAN CIVIL LIBERTIES UNION FOUNDATION,

*Appellants*,

v.

CENTRAL INTELLIGENCE AGENCY, *et al.*,

*Appellees*.

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BRIEF OF *AMICUS CURIAE* SENATOR JOHN D. ROCKEFELLER IV IN
SUPPORT OF APPELLANTS**

November 23, 2015

Susanne Peticolas (Bar No. 478827)
Lawrence Lustberg
Ana Muñoz
Gibbons PC
1 Gateway Center
Newark, NJ 07102
T: 973.596.4875
F: 973.639.6392
speticolas@gibbonslaw.com

## <u>STATEMENT REGARDING CONSENT TO FILE</u>

Pursuant to D.C. Circuit Rule 29(b), undersigned counsel for *amicus curiae* John D. Rockefeller IV represents that all parties have consented to the filing of this brief. In addition, pursuant to Fed. R. App. 29(c), counsel for *amicus curiae* states that no counsel for a party authored this brief in whole or in part, and no person other than *amicus curiae* or his counsel made a monetary contribution to its preparation or submission.

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), *amicus curiae* certifies that:

## A.  Parties and Amicus

Except for Senator John D. Rockefeller IV and any other *amici* who have not yet entered an appearance in this proceeding, all parties appearing in the court below and before this Court are listed in the Brief for the Appellants.

## B.  Rulings Under Review

References to the rulings at issue appear in the opening Brief for the Appellants.

## C.  Related Cases

References to the related cases appear in the Brief for the Appellants.

## D.  Statutes and Regulations

All applicable statutes and regulations are contained in the Brief for the Appellants.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. v

STATEMENT OF INTEREST OF AMICUS CURIAE ....................... 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................. 2

ARGUMENT ..................................................................................... 5

CONCLUSION ................................................................................ 13

　　CERTIFICATE OF COMPLIANCE ........................................ 14

　　CERTIFICATE OF SERVICE .................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. CIA*,
    2015 U.S. Dist. LEXIS 65724, (D.D.C. May 20, 2015) ................................... passim

*Judicial Watch, Inc. v. United States Secret Service*,
    726 F.3d 208 (D.C. Cir. 2013) ......................................................................... 5, 11

*Paisley v. CIA*,
    712 F.2d 686 (D.C. Cir. 1983) ......................................................................... 5, 10

**Other Authorities**

60 Cong. Rec. S 6405, 6406
    (Statement of Senator John D. Rockefeller IV, Dec. 9, 2014) ......................... passim

Senate Select Committee on Intelligence,
    *Committee Study of the CIA's Detention and Interrogation Program:*
    *Executive Summary, Chairman's Foreword* at 3 (Dec. 3, 2014) ........................... 10

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Senator John D. Rockefeller IV is a former United States Senator who served on the Senate Select Committee on Intelligence ("Committee" or "SSCI") for fourteen years, including as the Committee's chairman from 2007 - 2009.[1]  In the final five years of his service, Senator Rockefeller was intimately involved in the investigation and production of the SSCI's Report on the Central Intelligence Agency's ("CIA") Detention and Interrogation Program ("the Report").  The Senator helped broker agreements with agencies concerning access to materials at the outset of the SSCI's investigation.  He worked directly with staff members who researched and drafted the Report.  He participated in the extensive negotiations with the Executive Branch over redactions to the Report's Executive Summary.  And he supported the decision to transmit the full Report to the President and multiple federal agencies.  Based on his tenure on the SSCI, as well his three decades in the Senate, the Senator is uniquely positioned to explain Congress's intent when it released the full Report to the defendants in this case.

---

[1]  The Supreme Court has accepted similar *amicus* briefs from members of Congress in the past.  *See* Br. of Members of Congress and State Legislatures as *Amici Curiae* in Support of Respondents, (Jan. 28, 2015), *filed in King v. Burwell*, No. 14-114, 135 S. Ct. 2480 (2015) available at: http://tinyurl.com/p6n247m, Br. of Reps. F. James Sensenbrenner, Jr., John Conyers, Jr., Steve Chabot, Jerrold Nadler, Melvin L. Watt, and Robert C. Scott as *Amici Curiae* in Support of Respondents, (Feb. 1, 2013), *filed in Shelby County v. Holder*, No. 12-96, 133 S.Ct. 2612 (2013), available at: http://tinyurl.com/p2vnpgv.

*Amicus* Senator Rockefeller has a profound interest in ensuring that courts understand why the Senator and his colleagues did not seek to make the full Report public in December of 2014, and why the Senator and his colleagues chose to release the full 6,800-page Report to the Executive Branch.  In that regard, the Senator submits this brief to address the district court's error in holding that Congress did not relinquish control of the full Report when it transmitted it to the President in December of 2014.  As the Senator knows from his almost fifteen years as a member of the SSCI, such an interpretation is inconsistent with the agreement between the SSCI and the CIA at the outset of the SSCI's investigation, the negotiations over redactions in the Report's Executive Summary, and the SSCI's ultimate decision to transmit the full Report to federal agencies.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

As *Amicus* stated on the Senate floor, "the arc of this story comprises more than a decade of [his] thirty years of work in the Senate, and one of the hardest fights of [his] career."  60 Cong. Rec. S 6405, 6406 (Statement of Senator John D. Rockefeller IV, Dec. 9, 2014).  Senator Rockefeller first learned of the CIA's Detention and Interrogation Program in 2003, as the Committee's then-Vice Chairman, and, for the next ten years, fought tirelessly to learn about the extent and nature of the program.  *Id*.  His efforts, and those of his colleagues, culminated in a Report that was "both shocking and deeply troubling."  *Id*.  The SSCI never

intended for that Report to remain only in the Senate's hands. Instead, "it [was] [the Senator's] hope and expectation that . . . the entire 6800 page Study will eventually be made public with the appropriate redactions." *Id.*

Thus, the district court erred when it misread the record in this case and concluded that the Senator and his colleagues intended to retain control over the Report. *See ACLU v. CIA*, 2015 U.S. Dist. LEXIS 65724, at *30 (D.D.C. May 20, 2015). To the contrary, the Senator and his colleagues released the full Report to the Executive Branch with the intent that agencies have the power to utilize it as they saw fit, in particular, so that they might "develop forward looking lessons that must be central to all future intelligence activities." 60 Cong. Rec. S 6405, 6406 (Statement of Senator John D. Rockefeller IV). The district court reached a different conclusion because it misunderstood the dynamics underlying the investigation and the SSCI's release of the full Report. *Amicus* submits this brief in order to assist this Court in deciding this case, so that it does not labor under the same misunderstanding.

The district court's opinion errs in three relevant respects. First, the lower court misconstrued the SSCI's June 2009 agreement with the CIA as indicating an intent by the SSCI to maintain control of the future and final Report. *See ACLU*, 2015 U.S. Dist. LEXIS 65724 at *20. Second, the court mistook the Senator's and his colleagues' urgency to release the Report's Executive Summary as a desire to

- 3 -

shield the full Report from the public eye. *Id.* at *28. And finally, the court misinterpreted the letter from Senator Dianne Feinstein, then-Chairman of the SSCI, transmitting the full Report to the President, failing to understand that she and her colleagues intended to allow agencies to thereafter assume control over the full Report. *Id.* at *27.

Those who oversaw the investigation well understood that the secrecy necessary at the outset of the investigation would, and should, fall away at the conclusion of it. When the investigation began, *Amicus* Senator Rockefeller and his colleagues had struggled for years to obtain information about the CIA's Detention and Interrogation Program; they agreed to limits on their work product in order to secure access to information long withheld from Congress. Once their investigation concluded, mindful of the time it would take to negotiate the declassification of the full Report, the Senator and his colleagues focused on the declassification of the Executive Summary, engaging in exhaustive and lengthy negotiations with the Executive Branch. And when Senator Dianne Feinstein, then-Chairman, transmitted the full Report to the Executive Branch, she, with her colleagues, did so with the expectation that agencies would have the power to freely use the full Report to "fully learn[] the necessary lessons from this dark episode in our nation's history, and . . . ensur[e] that this never happens again." 60 Cong. Rec. S 6405, 6406 (Statement of Senator John D. Rockefeller IV).

For these reasons, as more fully set forth below, this Court should reverse the district court's decision.

## ARGUMENT

Courts weigh two factors when determining if a congressional document has become an "agency record" subject to the Freedom of Information Act. The inquiry turns on whether Congress has "relinquish[ed] control over the record[]" to an agency, and allowed "the agency to use and dispose of the record as it sees fit." *Judicial Watch, Inc. v. United States Secret Service*, 726 F.3d 208, 218 (D.C. Cir. 2013) (citations omitted). As Appellants correctly note in this case, "this two-factor test boils down to a question of congressional intent." Appellants' Br. at 20. The burden remains on the government to prove a "clear congressional intent to maintain control." *Paisley v. CIA*, 712 F.2d 686, 693–95 (D.C. Cir. 1983), vacated in part on other grounds, 724 F.2d 201 (D.C. Cir. 1984). Here, the Senator and his colleagues never intended to maintain exclusive control over the full Report, and transmitted the full Report to the Executive Branch so that agencies would have the power to use the Report as they saw fit. To hold otherwise, as the district court did, misunderstands the history of the investigation in three ways.

*First*, the SSCI insisted that its notes and drafts remain congressional records as part of a broader agreement that related only to its preliminary investigation and was limited to materials that were located in a CIA-controlled building where the

initial iterations of the Report were first drafted.  The Senator and his colleagues never intended to limit the CIA's or other agencies' power to disseminate and utilize the *final*, full Report sent to the Executive Branch by then-Chairman Dianne Feinstein.  *See* Letter from Sen. Dianne Feinstein & Sen. Christopher Bond to the Hon. Leon Panetta (June 2, 2009), JA 92 - 96 (memorializing terms of SSCI's access to CIA documents at a CIA facility).  Thus, the District Court erred when it held that the SSCI's June 2009 agreement with the CIA bore on its decision to cede control over the Report to federal agencies five years later.  *See ACLU*, 2015 U.S. Dist. LEXIS 65724 at *20.

Specifically, in June 2009, the SSCI reached an agreement with the CIA in which the Committee agreed to conduct its review of records inside a CIA facility, but the SSCI was assured that it would maintain control over its work product located at that facility during the pendency of its investigation.  *See* JA 92-94.  This deal must be understood in the context of the SSCI's long fight to get information about the CIA's Detention and Interrogation Program.  *Amicus* "first learned about some aspects of the CIA's Detention and Interrogation Program in 2003," but "at that point, and for years after, the CIA refused to provide [him] with additional information [he] requested about the program." 60 Cong. Rec. S 6405, 6406 (Statement of Senator John D. Rockefeller IV).  "In the years that followed, [he] fought — and lost — many battles to obtain credible information." *Id.*  In 2005,

for example, on behalf of the SSCI, he sought access to over 100 specific documents cited in an internal CIA report, but the CIA refused to cooperate. *Id.* This "challenge of getting accurate information from the CIA persisted," even after the Senator rose to the chairmanship of the SSCI in 2007 and held hearings on the program. *Id.*

For years, then, the CIA resisted the SSCI's efforts to investigate its detention and interrogation practices. When, finally, the SSCI launched its investigation in 2009, it did so with the purpose of securing access to information long withheld. Thus, when the CIA insisted that review of any documents take place in a CIA facility, *see* Higgins Decl. ¶ 10, JA 58, the SSCI — though troubled — consented, even though the CIA would have the potential ability to view materials related to the ongoing SSCI investigation of the CIA, including investigators' work product and investigators' communications.[2] To ensure that the SSCI remained in control of its drafts and internal communications about the investigation that were located in a CIA building, the SSCI inserted a clause in the 2009 agreement that made clear that its internal work product — its "notes,

---

[2] This concern was not unfounded. During the investigation, "the CIA inexplicably conducted an unauthorized search of the Committee's computer files and emails" at the CIA offsite facility with "the intent . . . to suppress the Committee's awareness of an internal CIA review that corroborated parts of the Committee's Study." Cong. Rec. S 6405, 6406 (Statement of Senator John D. Rockefeller IV).

documents, draft and final recommendations, reports or other materials" — would remain under the SSCI's exclusive control notwithstanding that these documents were drafted on a CIA-provided network drive and located within a "Reading Room" provided to the SSCI in a CIA building. *See* Letter from Sen. Feinstein & Sen. Bond to Hon. Panetta, JA 93-94. That provision only covered materials that were kept at the SSCI's reading room, a CIA-controlled space, during the ongoing investigation. The agreement was never intended to limit the SSCI's power to relinquish control over any final report going forward, or any other SSCI materials physically located outside of CIA-controlled spaces.[3] Instead, it provided protections for preliminary SSCI investigative information that was located in a CIA building during the course of the SSCI's inquiry. Importantly, the initial draft versions of the Report were eventually re-located to SSCI-controlled physical space in the Hart Senate Office Building, where the final Report was completed.

*Second*, the Senator and his colleagues chose not to seek declassification of the final full Report in order to speed release of information about the CIA's Detention and Interrogation Program. Certainly, *Amicus* and his colleagues never wished to shield the full Report — with appropriate redactions — from the public eye. Thus, the district court erred when it assumed that publication of the Report's

---

[3]  For this reason, as Appellants points out, the 2009 agreement refers exclusively to "these documents" and "these letters" rather than to any document or all future documents related to the investigation. Appellants' Br. at 25.

Executive Summary, rather than the full Report, implied that the Senator and his colleagues intended for the more complete document to forever remain secret. *ACLU*, 2015 U.S. Dist. LEXIS at *28.

The Senator and his colleagues did not have that intent. *Amicus* and his colleagues forewent immediate declassification of the full Report in order avoid a prolonged battle over redactions to it. Indeed, it took nine months to reach an agreement about redactions in the Executive Summary alone. *See* Higgins Decl. at ¶¶ 17 – 20, JA 62 – 64. To the Senator's "deep disappointment," the White House "strong[ly] defer[red] to the CIA throughout the process," which "at times, worked at cross purposes with [the] White House's stated interest in transparency." Cong. Rec. S 6405, 6406 (Statement of Senator John D. Rockefeller IV). Thus, the White House and the CIA insisted "on the unprecedented redaction of fake names in the report," and "also pushed for the redaction of information in the Committee's Study that should not be classified." *Id.* Given the nine months it took to redact and release the 500-page Executive Summary, it would have taken years to negotiate the release of a redacted full Report to the public. Explaining this decision, then-Chairman Feinstein wrote in the Report's foreword, "[s]eeking declassification of the more than six thousand page report would have significantly delayed the release of the Executive Summary." Senate Select Committee on Intelligence, *Committee Study of the CIA's Detention and Interrogation Program:*

*Executive Summary, Chairman's Foreword* at 3 (Dec. 3, 2014), available at http://tinyurl.com/nm6vdsu. As such, the Senator and his colleagues opted for the most expedient path and sought to make the Executive Summary public in order to shed at least a modicum of light on the CIA's "mistakes," so that Americans could take "a tremendous and consequential step toward" the "self-reflection and scrutiny" necessary to prevent future abuse. Cong. Rec. S 6405, 6406 (Statement of Senator John D. Rockefeller IV). But that strategic choice did not imply that the Senator and his colleagues wanted the full Report to remain secret. To the contrary, as the Senator publicly explained, "it [was] [his] hope and expectation that . . . the entire 6800 page Study will eventually be made public with the appropriate redactions." *Id.*

*Third*, Senator's Feinstein's letter to the President transmitting the Report indicated that the SSCI did not intend to maintain control over the document. *Accord Paisley*, 712 F.2d at 693–95 (holding that document was an agency record absent evidence of a "clear congressional intent to maintain control"). At the time, the Report was a formal, final Senate Report; it had been submitted by the SSCI to the full Senate, was no longer subject to modifications by the SSCI, and was ready for release. Thus, the district court erred when it held that Feinstein's letter, sent in her capacity as Chairman of the SSCI, did not evince the intent to turn over the full Report to the Executive Branch. *See* Letter from Sen. Dianne Feinstein to The

- 10 -

Hon. Barack Obama (Dec. 10, 2014), JA 133.  To the contrary, the letter indicates that the full Report should be disseminated widely "to the CIA and other components of the Executive Branch."  *Id.*  It makes clear that the Report should be "use[d] as broadly as appropriate to help make sure that this experience is never repeated."  *Id.*  Indeed, Senator Feinstein went so far as to "encourage use of the full report in the future development of CIA training programs, as well as future guidelines and procedures for *all* Executive Branch employees," reminding the President that he could use the full Report "*as [he] [saw] fit*."  *Id.* (emphasis added).  Thus, the Committee placed no limits on the full Report's use, and, instead, made clear that the Executive Branch could disseminate the full Report, and that agencies could use the full Report in whatever manner the President and his delegates deemed appropriate.  *See Judicial Watch*, *Inc*, 726 F.3d at 218 (explaining that congressional intent depends in part on whether an agency may "use and dispose of the record as it sees fit").  *Amicus* and his colleagues never believed that more was required in order to indicate their intent to relinquish control.

In sum, *amicus* respectfully submits this short brief in order to advise this Court that the lower court fundamentally misunderstood the intention of Congress, which is at the core of this Court's analysis.  *See ACLU*, 2015 U.S. Dist. LEXIS 65724 at *18.  Throughout the time that it investigated the CIA's Detention and

Interrogation Program, the SSCI sought to shed as much light as possible on the CIA's Detention and Interrogation Program. Because the CIA withheld access to records for so many years, the SSCI took steps in its 2009 agreement that it would not otherwise have taken in order to ensure that it would get access to documents in the CIA's control, specifically agreeing to review the documents at a CIA facility in a reading room provided to the SSCI. The SSCI's insistence on protecting its work product during the researching of the Report in CIA-controlled spaces in a CIA building must be understood against that background: It was both responsive to the CIA's concerns at the time and meant to shield that work product from scrutiny from the agency that was the subject of the investigation. But once it relocated materials to SSCI-controlled spaces at the Hart Senate Office building and completed a final version of the Report in those spaces, the record is clear that the SSCI sought to release as much information as possible, as quickly as possible. For that reason, it made only the Executive Summary public and chose not to embark simultaneously on the arduous process of negotiating redactions of the full Report with the Executive Branch. And Senator Feinstein's letter transmitting the full Report to the President was, in *amicus*'s experience, typical of letters relinquishing control over a document to the Executive Branch: Its intent was to release a congressional record to the Executive Branch for "use as broadly as appropriate to help make sure that this experience is never repeated" and

encouraged the President to use the full Report even more widely, "*as [he] [saw] fit*." *See* Letter from Sen. Feinstein to The Hon. Barack Obama, JA 133. Thus, Congress intended to relinquish control over the SSCI's full Report, and that document is now an agency record subject to the FOIA.

## <u>CONCLUSION</u>

For these reasons, the decision of the district court misunderstood the intent of the SSCI and should accordingly be reversed.

Respectfully Submitted,

/s/ Susanne Peticolas
Susanne Peticolas
Lawrence S. Lustberg
Ana Muñoz
Gibbons P.C.
1 Gateway Center
Newark, NJ 07102
Phone: (973) 596 – 4731
Email: speticolas@gibbonslaw.com

*Counsel for Amicus Senator John D. Rockefeller IV*

Dated: November 23, 2015

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 29
      and 32(a)(7)(B) because it contains 2,937 words, excluding the parts of the
      brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because
      it has been prepared in a proportionally spaced typeface using Microsoft
      Word in 14-point Times New Roman.

                                        */s/ Susanne Peticolas*

                                        Susan Peticolas
                                        *Counsel for Amicus Curiae*

Date: November 23, 2015

## CERTIFICATE OF SERVICE

On November 23, 2015, I served upon the counsel for Plaintiffs–Appellants and Defendants–Appellees one copy of *Amicus Curiae*'s  BRIEF IN SUPPORT OF APPELLANTS via this Court's electronic-filing system.  I further certify that I filed a true and correct copy of the foregoing brief with the Clerk of the United States Court of Appeals for the District of Columbia Circuit.  I further certify that I will cause eight (8) paper copies of this brief to be filed with the Court.

Hina Shamsi
American Civil Liberties Union Foundation
125 Broad Street — 18th Floor
New York, NY 10004
T: 212-549-2500
hshamsi@aclu.org

Thomas Gary Pulham
U.S. Department of Justice
Civil Division, Appellate Staff
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001
T: 202-514-4332
thomas.pulham@usdoj.gov

> */s/ Susanne Peticolas*
> Susan Peticolas
> *Counsel for Amicus Curiae*

Date: November 23, 2015

- 15 -